FILED
CLERK

7/3/2019 11:55 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X  **Docket#**
UNITED STATES OF AMERICA,        : 15-cr-00242-JFB
                                 :
      - versus -                 : U.S. Courthouse
                                 : Central Islip, New York
                                 :
MICHAEL BELFIORE,                : March 28, 2019
              Defendant          : 2:52 PM
------------------------------X

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A    P    P    E    A    R    A    N    C    E    S:**


**For the Government**:        **Richard P. Donoghue, Esq.**
                               United States Attorney

                          BY:  **Bradley King, Esq.**
                               Assistant U.S. Attorney
                               610 Federal Plaza
                               Central Islip, NY 11722

**For the Defendant**:         **Donna Aldea, Esq.**
                               **Bruce A. Barket, Esq.**
                               Barket Marion Epstein
                               & Kearon LLP
                               666 Old Country Road
                               Suite 700
                               Garden City, NY 11530




**Transcription Service**:     **Transcriptions Plus II, Inc.**
                               61 Beatrice Avenue
                               West Islip, New York 11795
                               laferrara44@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case 15-cr-242, United

2    States of America v. Belfiore.

3          Please state your appearances for the record.

4          MR. KING:  Good afternoon, your Honor.

5          Bradley King on behalf of the United States,

6    joined by Dwight Hale from the Nassau County Police

7    Department.

8          THE COURT:  Good afternoon to both of you.

9          MS. ALDEA:  Good afternoon, your Honor.

10          Donna Aldea, accompanied by Bruce Barket on

11    behalf of Dr. Belfiore.

12          THE COURT:  Good afternoon to both of you, and

13    Dr. Belfiore is present as well.

14          As you know, I scheduled this status conference

15    because I wanted to get a declaration or an affidavit

16    from Mr. Gann, which was filed with the Court on March

17    26th, and I have reviewed that affidavit, and I'll give

18    Mr. King a chance to respond to it if you want to.

19          But I just wanted to make sure, one of the

20    things that I had suggested was that any communications

21    that Dr. Belfiore had with Mr. Gann should be produced to

22    the government.  Was that done or was --

23          MR. BARKET:  Well, I asked Mr. Gann several

24    times about that.  He indicated he would search, and if

25    he found anything, he would produce it.  He didn't find

3

Proceedings

1    anything.

2              THE COURT:  Okay.  All right.  So you don't

3    think there's any emails or anything?

4              MR. BARKET:  I specifically asked him about

5    notes and emails, and he said he was not a -- in the

6    habit of taking notes about this, and that the -- he

7    would look through his emails to see if there was

8    anything that related in anyway to the plea discussions

9    and --

10             THE COURT:  Okay.  Can you just confirm that he

11   did that?  I just want to make sure that he did that.

12             MR. BARKET:  Sure, I --

13             THE COURT:  Because there's nothing in the

14   affidavit that says I searched my files.

15             MR. BARKET:  I will communicate with him right

16   now, if that's okay.

17             THE COURT:  Yes.

18             MR. BARKET:  I will send him a quick text.

19             THE COURT:  Okay.  Yeah.  There's no urgency.

20   All right.

21             Mr. King, go ahead.  Do you want to respond?

22             MR. KING:  Yes, yes.  Two points; the first is

23   that I did have as stated in the affidavit, a

24   conversation with Mr. Gann and Mr. Barket on March 14th,

25   and I take no issue generally with the statements in the

4

Proceedings

1    affidavit.  The thing that is missing from the affidavit
2    that I thought was significant, and that I noted in notes
3    that I took contemporaneously with the phone
4    conversation, was that Mr. Gann said twice during the
5    twice conversation, that the defendant had never
6    affirmatively told him that he wished to plead guilty.
7                And so that Mr. Gann's understanding is not
8    based on the typical statement from a defendant, i.e., I
9    would like to enter a guilty plea or something to that
10   effect, but rather on some of the background
11   conversations and information that he sets forth in the
12   affidavit, which are principally the large amount of
13   evidence, the overwhelming amount of evidence against the
14   defendant, the defendant's efforts to attempt to wind
15   down his practice, and the discussions that Mr. Gann had
16   with other associates, and relatives of the defendant,
17   the notable exception being the defendant's wife, who was
18   against the plea, which is obviously set forth in the
19   affidavit.
20               So that statement did not wind its way into the
21   affidavit, and I did confirm it with Mr. Gann twice.  I
22   think it is relevant to your Honor's decision.
23               THE COURT:  Okay.  Do you want to respond to
24   that?
25               MR. BARKET:  Well, I was part of the

5

Proceedings

1  conversation, so my memory is a little bit different than

2  Mr. King's but not substantially.  Marc did say that he

3  never -- that Mr. Belfiore never said the words, I will

4  take a plea, but the affidavit speaks to that, I believe,

5  in paragraph 12 where he indicates he doesn't recall

6  exactly what was said but it was clearly communicated to

7  him.

8          Let me just -- I'll read from it.  Although I

9  can't recall the words he used to convey this to me, I

10  understood from our discussions that he would, in fact,

11  enter a guilty plea.  So that I think is the gist of what

12  Mr. Gann conveyed to us, both before the Court asked us

13  to get the declaration, and then prior to writing it, and

14  obviously in the declaration itself.

15          THE COURT:  Okay.

16          MR. BARKET:  I don't dispute that he said he

17  doesn't recall Dr. Belfiore ever saying I'll take a plea

18  but I am not sure that's dispositive in any way.

19          THE COURT:  All right.  The purpose of this

20  interim step was for the Court to determine whether or

21  not there was something in the interactions and

22  discussions between Mr. Gann and Dr. Belfiore that would

23  resolve the question with regard to what his state of

24  mind was prior to his interactions with Mr. Liotti.  In

25  other words, whether or not it was clear that the reasons

6

Proceedings

1   that he went to Mr. Liotti was that he essentially did

2   not want to take the plea and was seeking another lawyer

3   who would give him different advice and try the case for

4   him.

5         Certainly this affidavit does not resolve that

6   issue.  There's nothing in Mr. Gann's affidavit that

7   would support a definitive conclusion based upon that,

8   although I understand the government's point, there maybe

9   some ambiguity as to how strong Dr. Belfiore's desire was

10  to enter a plea under the circumstances but I believe

11  that there's a sufficient basis to have a hearing on the

12  issue if the government wants to call Mr. Gann to have

13  him clarify that or ask him more questions about their

14  discussions, you know, that would certainly be

15  appropriate.

16        But I think that they have crossed the

17  threshold in terms of being entitled to try to have a

18  hearing to prove it, okay?  So I don't know if you

19  decided who you would call at a hearing.  Have you

20  already talked about what the scope of the hearing would

21  be and who your witnesses would be, or you're not to that

22  point yet?

23        MR. BARKET:  Well, it's not a -- I guess it

24  depends on -- we've certainly thought about it, and I

25  guess it depends on the breath of the Court's inquiry.

7

Proceedings

1  If it was to be a hearing on the overall trial

2  performance, we would want a number of different

3  witnesses.  If it's simply on the --

4          THE COURT:  No, at this point it's not over the

5  trial performance.  At least at this point, the scope of

6  the hearing would be the discussions back and forth with

7  Mr. Liotti regarding the strength of the case, whether or

8  not -- how likely it was he would be convicted on that

9  issue, and on your client's state of mind of whether if

10  Mr. Liotti had told him what Mr. Gann had told him,

11  whether or not he in fact would have pled guilty or not.

12  Those are -- that's the scope.  It's over -- the

13  discussions regarding the strength of the case, and

14  whether Dr. Belfiore was impacted by Mr. Liotti's advice.

15  What Mr. Liotti's advice was.  We have some of that

16  already obviously but we can explore that more.  What was

17  the nature of his advice.

18          MR. BARKET:  I guess I don't see a factual -- I

19  mean, the Court may want more of a testimonial record but

20  the record as it exists now seems unambiguous.  Mr.

21  Liotti didn't deny saying to Dr. Belfiore the things that

22  Dr. Belfiore attributed to him.  Dr. Belfiore's affidavit

23  is consistent with both what Mr. Liotti said in his

24  statements in the affidavit he submitted, and in the

25  multiple letters he has sent before and after our

8

Proceedings

1   interaction, and with Mr. GAnn.

2          So as far as a hearing goes, we would be happy

3   to put on, I guess Dr. Belfiore, I suppose Mr. Liotti

4   would be a witness, and Mr. Gann.  And there were other

5   lawyers that were around this -- around Dr. Belfiore at

6   the time that were involved with trying to negotiate the

7   transfer of his practice, that were consulting him, that

8   were friends, that we've spoken to that would also have,

9   I guess, information regarding this but it's all

10  perfectly consistent with --

11         THE COURT:  Well, it's not all perfectly

12  consistent because one of the things you have to show --

13  again, I am going to frame it again, if Mr. Liotti's

14  advice had been exactly the same as Mr. Gann's advice

15  with regard to the chances of prevailing at trial, would

16  Dr. Belfiore have pled guilty?  That's -- there is no

17  conclusive proof right now on that in your favor.

18  There's conflicting proof.  There's some proof that he

19  expressed in some form, a desire to plead guilty to Mr.

20  Gann, and Mr. Liotti has said that he was adamant that he

21  wanted to go to trial, I think.  I can go back and look

22  at Mr. Liotti's declaration but I think he said something

23  along the lines of that his client wanted to go to trial.

24         So that's -- you have to prove that, and that's

25  -- obviously it goes to the state of mind of Dr.

9

Proceedings

1  Belfiore.  I saw him take the witness stand and

2  vehemently deny that he had done anything wrong, so

3  that's a factor.  So that's the key issue.  I understand

4  there's not necessarily a dispute about what Mr. Liotti's

5  advice was but the nature of his conversations back and

6  forth with Dr. Belfiore, and Dr. Belfiore's own

7  independent desire to go to trial, regardless of what Mr.

8  Liotti's advice was is a key issue in the inquiry.

9           And so those other witnesses may have some

10  insight on that, as to what he was telling him about his

11  desire to plead guilty or go to trial, so you can decide

12  who you think would shed light on that.

13           MR. BARKET:  But I would think that we would --

14  at least five witnesses that come to mind.

15           THE COURT:  Okay.  You don't have to decide

16  today but I don't know what you want me to do.  Do you

17  want me to set a date for a hearing now and you could

18  figure out who your witnesses would be, and --

19           MR. BARKET:  Yeah, yeah. If that's okay with

20  the government, that's fine with us.

21           MR. KING:  Your Honor, before the date is set,

22  I just want to make sure I understand something.  Is the

23  Court making a finding now that the defendant had

24  expressed a desire to plead guilty to Mr. Gann?

25           THE COURT:  No, I am not --

10

Proceedings

1          MR. KING:  Okay.

2          THE COURT:  I'm not making any findings.  All

3    I'm saying, as you know, the threshold for a hearing in

4    this context is not extremely high.  All I am saying is

5    that they have -- based on their own client's affidavit,

6    and the combination of evidence before me, that they've

7    crossed the line to have a hearing but I haven't made any

8    findings about anything, okay?

9          MR. KING:  Okay.

10          THE COURT:  There's enough of a dispute about

11    what his state of mind was and the impact of Mr. Liotti's

12    advice that he should have a chance to try to prove that

13    it was bad advice that Mr. Liotti gave him, and that it

14    impacted him, and he would have pled guilty if he hadn't

15    gotten what he's arguing was bad advice, okay?

16          So how many weeks out do you think -- give me

17    an estimate of when you think you would be ready to go

18    forward, and what the government can do is after hearing

19    their case, you know, I will give the government a chance

20    on a different day to put any additional testimony, you

21    know -- I understand you may not know exactly who you

22    might want to call until you hear their case, so --

23          MR. KING:  I understand, your Honor.  Would we

24    also have the opportunity to the extent it's available to

25    produce documentary evidence?  Whether those are --

11

Proceedings

1          THE COURT:  What do you mean, to get it from

2    them or --

3          MR. KING:  Or to produce our own.  I mean, we

4    also have files on this matter that we may want to

5    introduce.

6          THE COURT:  Yes.

7          MR. KING:  I just want to make sure that

8    opportunity is open to us, as well.

9          THE COURT:  Yeah, that would be during your

10   case but what I am saying is you don't have to be

11   prepared to put on your witnesses right after them.

12         MR. KING:  Okay.

13         THE COURT:  You can hear what their evidence

14   is, and then I am -- you know, I will give you a date

15   shortly thereafter for you to put in any documents or

16   other witnesses, but if there are witnesses -- if there

17   are documents that you have that might relate to their

18   witnesses, I don't want to have to call people back

19   twice.

20         MR. KING:  Okay.

21         THE COURT:  So for if for example you have

22   emails from Mr. Liotti and they're going to call Mr.

23   Liotti, give them those emails, so we can have Mr. Liotti

24   here once.  Okay?

25         MR. KING:  I understand, yes.

12

Proceedings

1          THE COURT:  All right.

2          MR. BARKET:  So a couple of things, before we

3   get to the date, which I would think we'd need about four

4   weeks or so.

5          THE COURT:  Okay.

6          MR. BARKET:  Four or five weeks, so the end of

7   April, beginning of May.  Forgive me for asking this, and

8   if it's inappropriate then feel free to say that.

9          THE COURT:  Right.

10          MR. BARKET:  Having read the newspapers from

11   time to time, it seems likely that your Honor is going to

12   end up being in a different locale.  If that happens

13   shortly as I assume we all hope it will, what happens to

14   this case?

15          THE COURT:  First of all, nobody knows the

16   precise timing of any senate vote.

17          MR. BARKET:  I certainly don't.

18          THE COURT:  I don't either but if that were to

19   happen before this hearing were to take place, my

20   intention would be -- my understanding is, and other

21   district judges, including Judge Sullivan, who was

22   recently appointed, have kept certain matters even when

23   they go to the Circuit, so my intention would be for a

24   matter like this, obviously where I presided over the

25   trial, I would keep this because a judge would not be in

13

Proceedings

1   the same position as I am to -- so my intention was to

2   keep this case, independent of this motion, to keep this

3   case, whatever happens, okay?

4           MR. BARKET:  Okay.  Secondly, we would want the

5   documentary evidence ahead of -- and 3500 is probably not

6   the right section but we would want to provide to the

7   government, and to have available for everybody, any

8   emails or documents that relate to the witness' testimony

9   ahead of time.  Some of the individuals are private

10  citizens, Mr. Liotti included, I suppose.  So we would be

11  subpoenaing his files, his emails, his notes, along with

12  Mr. Gann's, assuming there are any, and --

13          THE COURT:  Yes.  Mr. King, when you were

14  referring to documents you might have that might be

15  relevant, are you referring to emails or from --

16          MR. KING:  Yes, I think that there are likely

17  emails that would be relevant to --

18          THE COURT:  From Mr. Gann and Mr. Liotti or --

19          MR. KING:  Yes, I believe both because we had

20  an Assistant United States Attorney who dealt with both

21  of them prior to this, and so to the extent that we're

22  now having a hearing, we'll certainly gather those

23  materials.

24          Similarly, as defense counsel suggested, it

25  would work the same way.  They'll gather materials that

14

Proceedings

1   they'll provide to us.  It will just be a matter of

2   working out a schedule to get that done.

3           THE COURT:  Okay.  Well, you both can work

4   out --

5           MR. BARKET:  Right.  We'll provide the

6   material, you know, in a week or so or as much time --

7           THE COURT:  Yes.

8           MR. BARKET:  -- as ahead of time as is

9   appropriate as the government needs.  There's no reason

10  not -- to hold anything back.

11          THE COURT:  Let me see if -- I'll give you a

12  date in May.  For some reason, you know, that's an issue

13  with your witnesses, you can just write us or speak to

14  Michelle and ask for a different date but --

15          MR. BARKET:  Okay.  And Mr. Gann did respond.

16  He indicated that --

17          THE COURT:  I like these instantaneous

18  responses you get Mr. Barket.

19          MR. BARKET:  Well, that's one of the benefits,

20  I guess of --

21          THE COURT:  I was on the committee that allowed

22  lawyers to bring their cell phones into the building.

23  See, it's paying off.

24          MR. BARKET:  Well, my family might disagree

25  with the benefit of the cell phone because their

15

Proceedings

1    expectation of instantaneous responses transcends

2    traditional business hours by quite a bit.

3              He indicates he did not have any discussions at

4    all concerning the plea via email.

5              THE COURT:  Okay.

6              MR. BARKET:  And we would want -- one more

7    thing.  I think that we would probably ask Ms. Gatz to be

8    available to testify because as I understand this, there

9    were discussions between Mr. Gann and Ms. Gatz with

10   anticipation that the case was going to plea.  So she may

11   actually have relevant testimony on this point.

12             THE COURT:  Okay.  May 9th at say 10 a.m.

13   Okay.  If you can't get everybody here on that day, you

14   know, we could set another date, whoever is left over,

15   okay?

16             MR. BARKET:  We'll certainly try.  It's

17   obviously in our interest to move it along, so --

18             THE COURT:  All right.  Thank you.  Have a good

19   day.

20             MR. BARKET:  Thank you.

21             MS. ALDEA:  Thank you, your Honor.

22                  (Matter concluded)

23                       -o0o-

24

25

16

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **July**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.